IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                      06 CR 1165 JB

TYRONE LARGO,

        Defendant.

SENTENCING MEMORANDUM AND
OBJECTIONS TO PRESENTENCE REPORT BY TYRONE LARGO

        COMES NOW the defendant by and through counsel and, pursuant to U.S. Const. Amends V and VI, and 18 U.S.C. § 3553(a) moves this court to impose a sentence sufficient but not greater than necessary to comply with the purposes of federal sentencing. As grounds, Mr. Largo states:

        1.        Tyrone Largo comes before the court for sentencing on a charge of Crime on an Indian Reservation: Abusive sexual contact of a child, contrary to 18 U.S.C. §§ 1153 and 2244. The federal sentencing guidelines applicable to this case are properly calculated as 21-27 months. This case involves a one-time incident of abusive sexual contact between Mr. Largo and his niece. Mr. Largo respectfully requests this court to consider sentence at the low end of the guideline range in this case. Such a sentence would be sufficient but not greater than necessary to satisfy the purposes of federal sentencing.

        2.        **The statutory framework of federal sentencing after *Booker*.**

18 U.S.C. § 3553(a) requires the court to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of federal sentencing, and imposes a statutory duty to consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the purposes of criminal punishment;
> (3) the kinds of sentence available;
> (4) the Guidelines range;
> (5) Sentencing Commission Policy Statements;
> (6) the need to avoid unwarranted sentencing disparities; and
> (7) the need to provide restitution

The purposes of federal sentencing enumerated in 18 U.S.C. §3553(a)(2) are the need for the sentence imposed:

> (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (b) to afford adequate deterrence to criminal conduct;
> (c) to protect the public from further crimes of the defendant; and
> (d) to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner.

*U.S. v. Booker*, 543 U.S. 220, 125 S.Ct. 739 (2005); *U.S. v. Kristl*, 437 F.3d 1050 (10th Cir. 2006); *U.S. v. Sanchez-Juarez*, 446 F.3d 1109 (10th Cir. 2006).

  3. **The nature and circumstances of the offense.**  Mr. Largo objects to the offense conduct set out in ¶¶5-11 of the Presentence Report in this case. The "Offense Conduct" described in those paragraphs relates to the alleged offense set out in the Indictment in this case. This is not the offense to which Mr. Largo pled guilty. Mr. Largo pled guilty to the Information filed August 24, 2006, which describes a different offense. The Indictment describes an alleged incident of aggravated sexual abuse of a

child occurring in the Fall of 2003.  The Information describes an incident of abusive sexual contact occurring in the Summer of 2003.

4. Paragraphs 5-11 of the Presentence Report describe an incident that is alleged to have occurred in the Fall of 2003.  However, discovery received from the government and investigation conducted in this case reveals that no incident between Mr. Largo and his niece could have occurred in the Fall of 2003.  The child at issue in this case was abandoned by her mother in the Summer of 2003.  She went to live with her great aunt, Lenora Garcia on July 18, 2003.  Upon information and belief, the child was continually in the custody and presence of her great aunt since July 18, 2003.  Mr. Largo was not anywhere near the child during the time that she was with her great aunt.

5. On October 20, 2003, the child, who was four years old at that time, is alleged to have made statements to a "home based teacher", Cotella Sneddy, stating that she had been sexually abused by Mr. Largo.

6. It is axiomatic that children are extraordinarily susceptible to suggestion and that interviews with children regarding sexual abuse should be carefully conducted by trained personnel under controlled conditions.  There is no recording or report of the interview of Ms. Sneddy with the child in this case.  Discovery in this case contains no information regarding the background, training, conduct or character of Ms. Sneddy.  Apparently, Ms. Sneddy was trolling for evidence of sexual abuse in that she "brought a book on body parts as part of her lesson for (the child). She also had talked about bad and good touch with the child and asked if she had ever been touched by anyone in her private

parts." The child is alleged to have stated in response to this prodding that her Uncle Tyrone, "tried to put a quarter in her pi." These are the statements that set in motion the chain of events leading to the charges in this case.[1]

7.      On October 23, 2003, the child was taken to visit a social services officer. During that meeting, the social worker and a Navajo police officer got into an argument in the presence of the child about the child's statements. According to discovery received from the government, this argument "traumatized the child." After this traumatic incident, the child began to experience problems. On November 12, 2003, the child's great aunt, Lenora Garcia, took her to a pediatric clinic. The child was complaining of itchiness in the vaginal area, back pain, and bed wetting. It is important to bear in mind that the child had not exhibited any of these symptoms prior to her meeting with Ms. Sneddy or the traumatizing incident with the social worker and the police officer. It is further important to bear in mind that the child had not been with or near Mr. Largo since before July 18, 2003. The medical examination of the child revealed no unusual findings. The physician noted with respect to interviewing the child that is was "difficult [for the child] to understand everything." The history was provided to the physician by the great aunt and not by the child. The medical record stated with respect to "time of incident"

---

[1] In a subsequent forensic interview with a trained investigator, which was videotaped, the child repeated the story she had told the social worker. Upon information and belief, this statement is not admissible against Mr. Largo in any context in which his Sixth Amendment confrontation rights are implicated pursuant to *Crawford v. Washington* 541 U.S. 36, 124 S.Ct. 1354 (2004). *Cf. U.S. v. Bustamante,* 454 F.3d 1200, 1202 (10th Cir. 2006)(*Crawford* not applicable at sentencing).

that it occurred "before July '03."  With respect to the communication skills of the child, the medical report indicated that the child was "verbal, poor history/difficult to interview."  With respect to physical findings, the report noted no abnormalities including "hymen: normal."

8.    Based on this information, on October 4, 2004[2], FBI agents went to interview Tyrone Largo at his home in Pinedale, New Mexico.  Mr. Largo denied any improprieties with his niece.  After repeated questioning and prodding, Mr. Largo continued to deny any impropriety with his niece. Not satisfied with these denials, agents told him that he was lying, that he needed to tell them the truth and that it would be much better for him if he confessed.  Despite the fact that Mr. Largo knew that he had not had any contact with his niece in the Fall of 2003, he told the agents what they wanted to hear or what they expected to hear.  The agents had him write out a statement saying that he was involved in an incident of sexual abuse in the Fall of 2003.  In fact, it is physically impossible for Mr. Largo to have been involved in any impropriety with his niece in the Fall of 2003 because she was living with her great aunt at that time.  Mr. Largo did not have any access or visitation with the child when she was with her great aunt.  Under the totality of the circumstances, Mr. Largo's statement is unreliable, if not involuntary.  *See, Motion to Suppress Involuntary Statements,* filed July 12, 2006.

---

[2] Paragraph 10 of the Presentence Report incorrectly states that this interview occurred on October 4, 2003 - prior to the disclosure in this case.

9. The child was interviewed by Federal Public Defender Investigators on July 14, 2006. At that time, she stated that she had no recollection of her Uncle Tyrone ever touching her in a bad way. She said that if her Uncle Tyrone had ever touched her, she would tell her grandma. She had no recollection of ever having gone to see a doctor or a counselor about anything relating to Tyrone. She stated that she missed Tyrone and would give him a big hug if she saw him.

10. Based on all of this information, it seems clear that there is a distinct lack of reliable information indicating that an incident occurred in the Fall of 2003 involving Mr. Largo and his niece. Certainly proof beyond a reasonable doubt that such an incident occurred does not exist. Hence the plea agreement and stipulations in this case. As such, the "offense conduct" set out in ¶¶5-11 of the Presentence Report should be struck from the Presentence Report. In its place, should be substituted the Defendant's version of events provided to the Probation Office and included in the Presentence Report as Mr. Largo's statement on acceptance of responsibility in ¶16. This is the incident to which Mr. Largo pled guilty, upon which the stipulations at issue in the plea agreement in this case are based, and upon which sentencing should be based.

11. To the extent that the court accepts the invitation in ¶ 19 of the Presentence Report to sentence Mr. Largo for an offense different from the one to which he pled guilty, Mr. Largo requests an evidentiary hearing at which he will be allowed to confront and cross-examine the evidence and accusations upon which he is to be sentenced. *See, U.S. v. Booker,* 543 U.S. 296, 124 S.Ct. 738 (2005).

12.     The Presentence Report in this case invites the court to engage in the type of judicial fact-finding found inappropriate by the Supreme Court in *Apprendi v. U.S.;* 530 U.S. 466, 120 S.Ct. 2348 (2000); *Blakely v. Washington,* 542 U.S. 296 (2004) and *U.S. v. Booker,* 543 U.S. 296, 124 S.Ct. 738 (2005).  Fundamentally, each of these cases condemned the practice of sentencing individuals for offenses different from the one of which they were convicted based solely on judicial fact-finding.  The Presentence Report in this case invites the court to sentence Mr. Largo for a completely different offense than the one to which he pled guilty and to raise Mr. Largo's guidelines fivefold from the two year range to a ten year range based on constitutionally suspect procedures.  This is a fundamentally different fact finding endeavor than the drug quantity determination procedures approved by the 10th Circuit in *U.S. v. Bustamante,* 454 F.3d 1200 (10th Cir. 2006) and *U.S. v. Dalton,* 409 F.3d 1247 (10th Cir. 2005).  The constitutional implications of imposing sentence for a substantially greater, completely different offense than the one of which Mr. Largo was convicted cannot be avoided by stating that "the guidelines are not mandatory."  The court should decline the Presentence report's invitation to employ such a problematic procedure.

13.     **History and characteristics of the accused.**  Mr. Largo was sexually abused as a child by an uncle who has since passed away.  Mr. Largo has dealt with the pain and shame of this abuse by attempting to anesthetize himself with alcohol.  Mr. Largo's criminal record consists entirely of alcohol related offenses.  Mr. Largo began drinking alcohol at the age of 12.  Mr. Largo acknowledges the difficulty that his own

unresolved history of sexual abuse has caused him.  It is Mr. Largo's pain that prompted him to plead guilty to the offense set out in the information in this case even though he knew that his niece had no recollection of any improper incident occurring between them.  Mr. Largo has asked for assistance with his drinking and with the underlying issue of his sexual history.  A sentence within the guideline range with treatment and counseling would effectively address those issues.  A sentence outside the guideline range would be greater than necessary to address those issues.

WHEREFORE, the defendant respectfully requests this court to strike ¶¶5-11 of the Presentence Report in this case, to impose sentence at the low end of the appropriate guideline range, and for such other and further relief as the court deems proper.

Respectfully submitted,

I hereby certify that a true copy of the foregoing was delivered to AUSA Samuel L. Winder at his box at the U.S. Courthouse, Albuquerque, NM, and mailed to USPO Teressa Ray Pena this 22nd day of December, 2006.

Electronically filed

FEDERAL PUBLIC DEFENDER
111 Lomas NW, Suite 501
Albuquerque, NM 87102
(505) 346-2489

Electronically filed
Stephen P. McCue
Attorney for Defendant