**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                         No. CR 06-1165 JB

TYRONE LARGO,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Sentencing Memorandum and Objections to Presentence Report by Tyrone Largo, filed December 22, 2006 (Doc. 29)("Sentencing Memorandum"). The Court held a sentencing hearing on January 30, 2007. The primary issues are: (i) whether the Court should remove paragraphs 5-11 of the Presentence Investigation Report ("PSR") because those paragraphs describe the alleged offense set out in the Indictment, not the offense to which Defendant Tyrone Largo pled guilty; and (ii) whether the Court should sentence at the low end of the guideline range. Because the Court believes that it should consider the offense set out in the Indictment, even though it does not find, by a preponderance of the evidence, that the events occurred, and because the Court believes that a sentence at the low end of the applicable guideline range is appropriate, the Court will overrule Largo's objection, but grant his request for a sentence at the low end of the guideline range.

**FACTUAL BACKGROUND**

On August 24, 2006, Largo pled guilty to one count of abusive sexual contact of a child in violation of 18 U.S.C. §§ 1153, 2244(c), and 2246(3). See Plea Agreement, filed August 24, 2006

(Doc. 16)("Plea Agreement"); Information, filed August 24, 2006 (Doc. 13)("Information"). The alleged victim in this case, Shautana C., is Largo's niece. See Sentencing Memorandum ¶ 1, at 1.

In the summer of 2003, Shautana's mother, Victoria Largo, abandoned her and she began living with her great aunt, Lenora Garcia, on July 18, 2003. See id. ¶ 4, at 3. Largo represents that he did not have any contact with Shautana, and did not visit her while she was living with Garcia. See id. ¶ 8, at 5.

On October 20, 2003, Shautana, who was four years old at that time, allegedly made statements to a home school teacher, Cotella Sneddy, that Largo had touched her on her private parts while she was living with her mother. See PSR ¶ 6, at 4; Sentencing Memorandum ¶ 5, at 3. Largo suggests that Sneddy was "[a]pparently . . . trolling for evidence of sexual abuse," and contends that she "brought a book on body parts as part of her lesson[,] . . . talked about bad and good touch with the child[,] and asked if she had ever been touched by anyone in her private parts." Sentencing Memorandum ¶ 6, at 3-4. Shautana allegedly responded that Largo "tried to put a quarter in her pi." PSR ¶ 7, at 5; Sentencing Memorandum ¶ 6, at 4.

Largo represents that discovery has not produced any information regarding Sneddy's background, training, conduct, or character. See Sentencing Memorandum ¶ 6, at 3. There is no recording or report of Sneddy's interview with Largo. See id. In a subsequent videotaped interview with a trained forensic investigator, however, Shautana repeated the story. See id. at 4 n.1.

Shautana was taken to visit a social services officer on October 23, 2003. See id. ¶ 7, at 4. Largo alleges that, during that meeting, the social worker had an argument with a Navajo police officer regarding Shautana's statements in the girl's presence. See id. Largo represents that discovery materials he received from the United States indicate that witnessing this argument

"traumatized the child."  Id.

On November 12, 2003, Garcia took Shautana to the Navajo Nation pediatric clinic in Gallup, New Mexico, because she was complaining of itchiness in the vaginal area and of back pain, and had begun wetting her bed.  See PSR ¶ 8, at 5; Sentencing Memorandum ¶ 7, at 4.  Largo contends that Shautana had not exhibited any of these symptoms before meeting with Sneddy or witnessing the argument between the social worker and the police officer.  See Sentencing Memorandum ¶ 7, at 4.  Largo represents that he had not had any contact with Shautana since before July 18, 2003.  See id.

The physician that examined Shautana at the pediatric clinic noted that, in the course of her interview with the girl, it was "difficult [for the child] to understand everything."  Id. ¶ 7, at 4. Garcia, not Shautana, related information about the alleged incident to the physician.  See id.  The medical record provided to the physician indicated that the "incident" had occurred "before July '03."  Id. ¶ 7, at 4-5.  The medical report that the physician prepared indicated that Shautana was "verbal, poor history/difficult to interview,"  did not have any physical abnormalities, and described her hymen as "normal."  Id. ¶ 7, at 5.

Federal Bureau of Investigation ("FBI") special agents interviewed Largo on October 4, 2003, at his home in Pinedale, New Mexico.  See PSR ¶ 10, at 5; Sentencing Memorandum ¶ 8, at 5. Largo initially denied the agents' allegations that he had engaged in inappropriate behavior with Shautana.  See PSR ¶ 10, at 5; Sentencing Memorandum ¶ 8, at 5.  After more persistent questioning, Largo described to the agents one incident in the fall of 2003 during which he had engaged in improper sexual behavior with Shautana.  See PSR ¶ 11, at 5; Sentencing Memorandum ¶ 8, at 5. Largo represents that, at the agents' insistence, he documented his responses regarding the incident

in a written statement.  <u>See</u> Sentencing Memorandum ¶ 8, at 5.

The Federal Public Defender's investigators interviewed Shautana on July 14, 2006.  <u>See</u> <u>id.</u> ¶ 9, at 6.  During this interview, Shautana said that she had no recollection of Largo ever touching her in a bad way, and remarked that, if Largo had ever touched her, she would tell her grandmother. <u>See</u> <u>id.</u>  Shautana professed no recollection of ever having gone to see a doctor or a counselor in association with any incident involving Largo.  <u>See</u> <u>id.</u>

On October 5, 2006, Largo issued the following statement through his counsel:

In the summer of 2003, my sister and her kids were living with us in Pinedale.  One day I had been drinking, and I was lonely and horny.  I went into the bedroom where my niece was sleeping, and I put my hand on her private parts over her pajamas.  I am so ashamed that I did this.  I don't know what I was thinking.  One of my uncles used to touch me like that when I was little and it made me hate him and hate myself. I would like some help to stop drinking and to make sure this never happens again. Thank you for taking the time to read this.

PSR ¶ 16, at 6.  Largo represents that the uncle to which he refers in his statement has since passed away.  <u>See</u> Sentencing Memorandum ¶ 13, at 7.  Largo represents that, since the age of twelve, he has used alcohol to cope with the pain and shame associated with his own history as a victim of sexual abuse.  <u>See</u> <u>id.</u>  ¶ 13, at 7-8.

## PROCEDURAL BACKGROUND

On May 23, 2006, a federal grand jury returned an indictment charging Largo with aggravated sexual abuse of a child in violation of 18 U.S.C. §§ 1153, 2241(c), and 2246(2)(C).  <u>See</u> Redacted Indictment at 1, filed May 23, 2006 (Doc. 1)("Indictment").  The Indictment describes an alleged incident of aggravated sexual abuse of a child occurring in the Fall of 2003.  <u>See</u> <u>id.</u>  On August 24, 2006, the United States filed its Superseding Information, which charged one count of abusive sexual contact of a child in violation of 18 U.S.C. §§ 1153, 2244(c), and 2246(3), based on

an incident of abusive sexual contact that occurred in the "summer of 2003." Information.  On the same day, the parties entered into a plea agreement by which Largo pled guilty to the charges contained in the United States' Information.  See Plea Agreement at 2.

The parties stipulated that the base offense level is sixteen pursuant to U.S.S.G. § 2A3.4(b)(1), the guideline applicable to abusive sexual contact involving a victim less than twelve years old.[1]  See Plea Agreement ¶ 7.a, at 3.  The parties agreed that, pursuant to U.S.S.G. § 2A3.4(b)(3), two additional levels should be added to Largo's base offense level because the victim was in his custody, care, or supervisory control.  See id. ¶ 7.b, at 3.  Finally, the parties stipulated that no other enhancements under the United States Sentencing Guidelines were applicable.  See id. ¶ 7.c, at 3.  In excluding all other enhancements, the parties specifically referenced U.S.S.G. § 2A3.4(c), the provision that provides a cross reference to the guideline for criminal sexual abuse, U.S.S.G. § 2A3.1, if the defendant's offense of conviction involved criminal sexual abuse.  See id.

The United States Probation Office ("USPO") disclosed the PSR on October 24, 2006.  See PSR at 2.  Paragraphs 5 through 11 of the PSR described the Fall 2003 incident that is alleged in the Indictment.  See PSR ¶¶ 5-11, at 4-5.  In paragraph 19 of the PSR, the USPO noted that, absent the plea agreement between the parties, it would have applied the cross reference in U.S.S.G. § 2A3.4(c)(1), and applied U.S.S.G. § 2A3.1 to calculate Largo's base offense level.  See PSR ¶ 19, at 7.  Under U.S.S.G. § 2A3.1, Largo's base offense level would have been twenty-seven.  See id.

In calculating Largo's recommended sentence under the Guidelines, the USPO incorporated the stipulations the parties reached in the plea agreement.  The USPO began with a base offense level

---

[1]The United States Probation Office states that, in calculating Largo's sentence, it used the 2002 edition of the United States Sentencing Guidelines.

of sixteen, added two levels pursuant to U.S.S.G. § 2A3.1(b)(3)(A), and subtracted three levels under U.S.S.G. § 3E1.1 for Largo's acceptance of responsibility. <u>See</u> PSR ¶¶ 19, 21, 26, at 7-8. Based on an adjusted offense level of fifteen, and Largo's criminal history category of II, the USPO calculated his guideline imprisonment range at fifteen to twenty-seven months. <u>See</u> PSR ¶ 48, at 13.

Largo objects to paragraphs 5 through 11 of the PSR because they describe the incident described in the Indictment, not the incident described in the Information to which he pled guilty. <u>See</u> Sentencing Memorandum ¶ 2, at 2. Largo contends that, if the Court were to consider sentencing him under the criminal sexual abuse guideline the USPO referenced in paragraph 19 of the PSR, that his sentence would be for a crime to which he did not plead guilty, and requests the Court grant him an evidentiary hearing to confront and cross-examine the evidence related to criminal sexual abuse. <u>See</u> Sentencing Memorandum ¶ 11, at 6. Largo asserts that, combined with treatment and counseling, a sentence within the guideline range is sufficient without being greater than necessary to satisfy federal sentencing goals, and requests that the Court sentence him at the low end of that range. <u>See</u> <u>id.</u> ¶ 13, at 8.

The United States does not oppose Largo's request. The United States has no objection to removing paragraphs 5 through 11 from the PSR, and agrees that the cross reference to U.S.S.G. § 2A3.1 should not apply in this case. <u>See</u> Transcript of Hearing at 5:15-17; 6:8-11 (Winder)("Transcript").[2]

## LAW REGARDING GUIDELINE SENTENCES

The Supreme Court of the United States' holding in <u>United States v. Booker</u>, 543 U.S. 296

---

[2]The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

(2005), "requires a sentencing court to consider Guideline ranges, but it permits the court to tailor the sentence in light of other statutory concerns as well." Id. at 245-46.  Under the new advisory Guidelines scheme, "district courts have a freer hand in determining sentences." United States v. Trujillo-Terrazas, 405 F.3d 814, 819 (10th Cir. 2005).  Thus, "while the Guidelines will exert gravitational pull on all sentencing decisions . . . district courts now have more discretion to tailor sentences to the individual circumstances of a defendant." Id.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. . . .

18 U.S.C. § 3553(a)(2)(A)-(D).  See 18 U.S.C. § 3551 ("[A] defendant who has been found guilty of an offense described in any Federal Statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.").  To achieve these purposes, 18 U.S.C. § 3553(a) directs sentencing courts to consider: (i) the Guidelines,  (ii) the nature of the offense and the defendant's character; (iii) the types of available sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims.  See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines are no longer mandatory, the Tenth Circuit has clarified that, while

the Guidelines are one of several factors enumerated in 18 U.S.C. § 3553(a), they are entitled to considerable deference.  See United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many").  They are significant because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses."  Id. (internal quotations omitted).  See United States v. Kristl, 437 F.3d 1050, 1054 (10th Cir. 2006)(holding that sentences within the Guidelines' recommended range will be presumed reasonable).  In summation, a sentencing court must now consider all the factors enumerated in 18 U.S.C. § 3553, including the Guidelines, and resolve conflicts between them; the Guidelines remain a highly significant factor in the court's analysis and sentences that fall within the Guidelines' range are presumptively reasonable.

Moreover, in Justice Breyer's remedial opinion in United States v. Booker, the Supreme Court recognized the important role that the advisory Guidelines continue to play in facilitating Congress' goal of achieving national uniformity of sentencing.  See 543 U.S. at 246.  To conform with Congressional intent, sentences must be "reasonable."  Id. at 260-61.  Consistent with that recognition, and the presumptive reasonableness of guideline sentences, the Tenth Circuit has adopted a two-step approach to reviewing criminal sentences for reasonableness.  See United States v. Kristl, 437 F.3d at 1055.  First, the Tenth Circuit reviews the district court's consideration of the applicable guideline range; if "the district court properly considered the relevant Guidelines range and sentenced the defendant within that range, the sentence is presumptively reasonable."  Id. Second, once this presumption is established, the burden shifts to the defendant to demonstrate why the sentence is unreasonable in light of the other relevant sentencing factors.  See id.

-8-

On the other hand, criminal sentences that vary materially from the properly calculated guideline sentencing range are not accorded a presumption of reasonableness.  See United States v. Cage, 451 F.3d at 594-95.  The Tenth Circuit has explained that the determination whether a sentence was reasonable depends on the strength of the correlation between the magnitude of the presence of the factors enumerated in 18 U.S.C. § 3553(a) and the extent of the district court's departure from the guideline sentence.  See id.

## ANALYSIS

Largo objects to the inclusion of paragraphs 5 through 11 of the PSR because they describe the incident described in the Indictment, not the incident described in the Information to which he pled guilty.  Largo agrees that the USPO has properly calculated his guideline sentence based on the offense level and enhancements to which the parties stipulated in the plea agreement.  Largo requests that the Court sentence him at the low end of the guideline imprisonment range that the USPO calculated.  Because the Court believes that it should consider the offense set out in the Indictment, even though it does not find, by a preponderance of the evidence, that the events occurred, and because the Court believes that a sentence at the low end of the applicable guideline range is appropriate, the Court will overrule Largo's objection, but grant his request for a sentence at the low end of the guideline range.

Largo maintains that this case involves a one-time incident of abusive sexual contact between Largo and Shautana.  See Sentencing Memorandum ¶ 1, at 1.  Largo objects to the inclusion of paragraphs 5 through 11 of the PSR because they describe the incident described in the Indictment, not the incident described in the Information to which he pled guilty.  See id. ¶ 3, at 2.  Largo maintains paragraph 16 of the PSR incorporates his statement regarding the incident to which he pled

guilty and should be substituted for the information described in paragraphs 5 through 11.   See id. ¶ 10, at 6; Transcript at 6:12-16 (McCue).

The section of the PSR containing paragraphs 5 through 11 is titled "Offense Conduct."  PSR at 4.  At the sentencing hearing, Largo's counsel acknowledged that his objection was not truly to the content of the information contained in the paragraphs, but to the misleading title of the section. See Transcript at 8:7-8 (McCue).

The Court does not believe that the information to which Largo objects should be removed from the PSR, or that the Court should limit the breadth of information it considers for the purpose of sentencing.  See 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."). While the Court will not strike paragraphs 5 through 11 from the PSR, it will change the title of the "Offense Conduct" section to "Factual Background."   The Court will also add a sentence at the end of paragraph 16 indicating that the parties agreed upon the information contained in the United States Information, but not the Indictment.

Although the Court will not eliminate paragraphs 5 through 11 from the PSR, and has carefully considered the information contained therein, the Court will not consider the allegations contained in those paragraphs as relevant conduct for the purposes of sentencing because it does not find that the information is reliable enough to substantiate the paragraphs by a preponderance of the evidence.  Largos' representations that he did not have access to Shautana during the fall of 2003, the lack of reliable reports related to Sneddy's conversation with Shautana, the difficulties the physician at the Navajo pediatric clinic recorded having in conducting interviews with Shautana, the

-10-

physician's assessment that Shautana did not suffer from physical abnormalities, Shautana's subsequent statements that she has no recollection of Largo abusing her, and Shautana's young and impressionable age all undermine the reliability of the evidence underlying the fall 2003 incident. Accordingly, the Court will accept the USPO's calculation of the guideline sentence in the PSR consistent with the plea agreement.

Largo contends that a sentence within the guideline range, with treatment and counseling, would effectively address his issues with drinking and with his sexual abuse history. See Sentencing Memorandum ¶ 13, at 8. The United States asserts that Largo has taken responsibility for his actions, and concurs with Largo's request that he be sentenced at the bottom end of the guideline sentencing range. See Transcript at 17:15-18:1 (Winder).

The Court agrees with the parties that a guideline sentence is reasonable in this case, and believes with the treatment provisions the Court has recommended and the conditions it has imposed, the sentence is sufficient without being greater than necessary to address Largo's issues with drinking and with his sexual abuse history, and to satisfy federal sentencing goals.

**IT IS ORDERED** that the Objections to Presentence Report by Tyrone Largo are sustained in part and overruled in part. The Court will deny the Defendant's request that the Court strike paragraphs 5-11 of the PSR, but will decline to find, by a preponderance of the evidence, that the events described therein occurred. The Court will also impose a sentence at the low end of the guideline range.

_____
UNITED STATES DISTRICT JUDGE

_Counsel:_

David C. Iglesias
    United States Attorney for the
        District of New Mexico
Samuel L. Winder
    Assistant United States Attorney
Albuquerque, New Mexico

            _Attorneys for the Plaintiff_

Stephen P. McCue
    Federal Public Defender
Albuquerque, New Mexico

            _Attorney for the Defendant_